Thank you very much. We're reconvened. I'm pleased to have Judge Rice from the District of Vermont sitting with us, with Judge Lynch and with me, and we'll hear the first case, which is Palm Beach Maritime Museum versus Hapolim Securities. May it please the Court, good afternoon. Mainly on behalf of the appellant, Palm Beach. Before I come to the issue, I wanted to raise one point, which will be important to this entire discussion. The anti-fraud provisions of the 1934 Act and the rules pursuant to that speak in general. It says any person, it doesn't limit the definition of person, it says any person who violates the provisions in connection with the purchase or sale of a security can be found liable pursuant to those provisions. Now, I say that because it's important, because you'll hear from the appellees that will argue that simply because one of our directors and our former CEO committed a fraud against the entity, that we are not able to sue. But remarkably, this Court's already addressed that issue in Ruckel a long time ago. And that is now the well-settled law that says, even if our own CEO, directors, or whoever misbehaves and they violate 10b-5 in the rules, and the entity issues a security because of that, they can pursue that action. The arguments to the contrary should therefore be ignored, because the law is well-settled. The reason we're here today is the standing issue. The question is whether Palm Beach, by issuing two significant notes for $24 million, has standing to pursue the 10b claims. Now, we all know. But put another way, the question is whether they are a seller of a security. Correct. So, Your Honor, to answer your question, there's no debate, as we can tell from the district court, that notes are securities. The 34 Act defines unless you go through the Reeves standard, and it's the defendant's burden to prove that a particular note does not fit the standard that the Supreme Court outlined in Reeves to say that note is not a security. So the issue of whether the notes are securities, the appellees never addressed that issue. The court below assumed that the notes were securities. Where the court went astray, it said, well, assuming the notes are securities, the seller of those securities would be the authority. And that misconstrued the transaction. There are two different, I think there's confusion on everybody's part, it seems to me, in the briefing as to what securities we're talking about. By the time we're here, it seems to me it's clear that your position is that the notes are the securities, not the bonds. That is correct, Your Honor. So we don't have to worry about the bonds at all. They're securities. You're not the seller of them, but your suit isn't based on that at all. Correct. That is a conduit argument that we raised below that we've no longer raised at this point.  And my question is, I'm just trying to understand how these notes operated. These notes were provided to the Wisconsin Public Financing Authority. Correct. And was there any contemplation that they would be resold to an investing public? What happened with the notes were the notes were assigned to the trustee as security for the payment of the bond proceeds. Now, I understand where the question is coming from, because the district court said that the notes weren't packaged to be sold. But you don't have to actually package the notes to be sold. And, for example, in Realtek and HSU, the appellees are going to make this argument. What happened in the remake transactions, the real estate, mortgage, conduit transactions, those notes were placed into the remake. Those notes weren't sold to the public. What essentially was sold were certificates in the remake entity that held the notes. So in a similar sense, this is what we're dealing with. The notes. But one of the factors that is to be considered under the Supreme Court's test is the plan of distribution of the instrument. And here the plan of distribution was that it wasn't going to be distributed, right? I mean, it was going to be held as security for the payment. Your Honor, that is correct, but that is no different in the transaction in Realtek. In Realtek, there were two bases why the Court said the notes were security. There was a first point where it contemplated that the plaintiff would sell rated securities. We're not traveling on to that point. There's a second point. In Realtek, what happened is there were certain notes and mortgages that secured repayment of monies. Those notes were pooled and placed into an entity. That entity held on to those notes, and the entity, and essentially what the entity did is it sold interest in the entity to investors. Right? So the notes weren't contemplated as being sold in that case in Realtek to the invest in public. The substance of the transaction is still the same. What happens is the investors buy the certificates, and that gives them a right to receive income from the notes that are held by the entity. This is no different. But this didn't, that's not what happened in this transaction. So they weren't going to get any kind of income from those notes, correct? They were just to secure the financial transaction. No. The investors actually, the notes guaranteed, what would happen is the notes provided that the revenue from the Palm Beach Academy would then be conveyed to the trustee, and that amount that came from the revenue of Palm Beach is what was used to pay the bondholders. So, yes, the notes did contemplate that the investors would receive monies on the revenue generated from the notes. So the notes are held by the trustee, so the trustee can enforce the right to say, well, if you haven't paid us, that's the revenue that's contemplated by this note, we can take action. Well, they can take action. But in terms of the bondholders, the bondholders' right to receive their principal and interest on the bonds I thought was guaranteed by the full faith and credit of the Wisconsin agency. No, Your Honor. So if you defaulted on the notes, then the bondholders would not receive payment? No, Your Honor. If you defaulted on the notes, the bondholders came to us to pursue recovery, and in the long run we eventually reached a settlement where we agreed to pay a lump sum of a property to the bondholder. The Wisconsin authority, their only involvement here was... They had no risk. They had no risk. They just simply made this transaction a tax-exempt transaction for the benefit of, which is what the conduit transactions typically work, but... Well, I'm not responsible for what the tax laws look like, but so you're saying essentially this is just like a mortgage-backed security transaction. Exactly. Exactly, because the only recourse that the bondholders have for lack of payment for any revenue generated from Palm Beach, the only recourse that is against the bondholders. The Wisconsin authority is just the conduit to make the transaction for purposes of whatever, who came up with the tax code, tax-exempt. I see I'm, oh, I'm not there yet. So that's the point, and this is why we say Realtek is similar, because that's what happened in Realtek. The notes were pooled into the entity, and the investors, their only recourse is to get whatever it is from that revenue. So in that sense, the district court below didn't dispute that that transaction would be a sale, as the definition under the 1934 Act speaks to. What you will hear from the Applees, I see my time is up, so I will... Go ahead. Sorry? Continue. Right. So what you will hear from the Applees is they will say, well, these notes aren't securities. And they didn't travel under the test that's required under Reeves. They say, well, the municipal disclosure rules say these notes are not a separate security. And what's interesting, the cases they cite that speak about that, they involve two types of actions. They involve actions under the 10b-5, the anti-fraud under the 34 Act, and section 12 of the 33 Act. And if you look carefully at their cases, what the cases say is, well, that affects the 33 Act. This whole separate security argument of whatever it is, it does not negate the anti-fraud Act, because Congress didn't see fit to exempt these securities from the 1934 anti-fraud Act. In fact, we know municipal securities before the 1975 amendment, you were not able to pursue the anti-fraud. Let me take one step backward. Do you agree that what our job here is in deciding whether these notes are securities is to apply the Supreme Court's four-part test? Or do you think that's not what we're doing? Well, that's, well, that would, that, you would have to have the record there, because the defendants, it's the defendants' burden to explain why these notes are not the test. Now, if the defendant had done that below and the district court said, apply in that test, I conclude that based on Reeves, this is not a note that fits the profile. You're saying they waived the argument that the notes are not securities? They certainly have. They could have done it again here. They could have analyzed Reeves to say, here's why this note is not a security. But instead, what they, they brought a new test. They said under the municipal disclosure rules, this note is not a security. But that's not the test. The test is Reeves. So they had an opportunity below to address Reeves. They did not. They had an opportunity here to address Reeves, and they chose not to. It's not this Court's job to do their job for them. They had the opportunity to address Reeves. We pointed out Reeves in the briefing below in the district court, so they know Reeves exists. Instead, they say under the municipal rules, this is not a security. My second question in relation to that, you rely very heavily on Realtek, which is an out-of-circuit district court decision. Is there any other authority, is there any appellate authority anywhere, let alone anything binding on us, that says that in a situation where notes are themselves not intended for distribution, as in a mortgage-backed security transaction, that those, there can be a suit by a buyer or seller of those notes, because that kind of note constitutes a security? Your Honor, unfortunately, the cases on these conduit finance and transactions have not reached the point where we are today, which we looked and we anticipated we would reach this point. But, you know, I mean, I'm just wondering how far this reaches. If I buy a house and give a note for the mortgage, and the bank, and I know, because that's what goes on in the world, the bank is going to bundle that mortgage and sell it and sell that note into the market to back various bonds that are issued. Or if I'm a student and I take out a student loan and I give a note to the bank to evidence my indebtedness, knowing that the bank is going to securitize that and send it out, if there's a fraud in connection with the loan transaction in the first place, then that can give rise to a securities fraud action? Your Honor, it depends on the nature of the note, and that's the important part. Well, that's one of the four factors. That's one of the four factors. In your example, for example, the student loan. Those are consumer-type transactions. Those are consumer-type notes. The home mortgage, similarly, is a consumer-type note. It's not a note for capital improvements as this was. So you win on the first factor, and then we have to work through the other factors. Right, but if you look at the contemplated transaction, when you look at the remaining factors, it still contemplates, well, what's the nature of the transaction? It's not simply you buy one note and you sell it to the market. No, this entire transaction, without the notes, the bonds are not in place. So this entire transaction, if you look at the transaction as it is. The transaction, yeah. Correct. That's why the confusion over is it the bonds or is it the notes, I think at one point the district court refers to bonds when it clearly meant notes. Correct. Okay. And that's why we're here today, because the confusion. Thanks very much, Mr. Chief. Thank you, Your Honor. We have reserved some time. Thank you, Your Honor. Good afternoon. May it please the Court. My name is Darlene Fairman. I'm an attorney with Herrick Feinstein, and I'm here today on behalf of the defendants, Mr. Chan, Mr. Diascola, and Hapolim Securities, which I will probably say HSU sometimes over the course of the argument. I guess I'm going to start at the end, because that's where Mr. Lee started, and just briefly say that the cases on page 16 of the reply brief that were submitted, beginning with the Ruckel case and all of the other cases on page 16, actually have nothing to do with this case at all. It is clear that agency imputation is applied in 10b-5 securities cases. The leading case is the Suez case in the Second Circuit, but there are other cases as well. The Ruckel case, the cases cited on page 16 of the reply brief, are cases having to do with the ability of a corporation to sue an insider for fraud. In other words, an insider can't defend a fraud case brought against him by saying, well, corporation, I knew all about the fraud because I'm an insider, therefore you knew all about the fraud, so you can't have any claim against me. That's not what happened here. None of these defendants are insiders and none of them are looking to impute their own knowledge to the corporation. They're looking to impute an insider's knowledge to the corporation. So none of those cases apply here. Moving on to the question that was presented of whether or not these notes are securities first, the Court should be aware that that is not what was pled here. What was pled in the complaint, the only allegations you'll find in the complaint, is that the Academy issued the bonds. There's not even a mention of notes, nor is there even a mention of the entity that actually did issue the bonds, which was the State of Wisconsin. So taking Judge Lynch's example with opposing counsel, and he talked about the student loan and the mortgage, just because eventually those securities make it into the marketplace doesn't make the homeowner and the student their seller. Is that your point? That is my point. I would say it's even more analogous to a mortgage loan, a mortgage loan on a home, if we're going to look at the family resemblance test, which I don't think we should be doing, by the way. But if we did, the reason these funds were borrowed was not to run the business. It was to buy the school buildings. They had very onerous rents. They didn't want to be a renter anymore. They wanted to be a homeowner. They wanted to buy their school buildings. And that was the express purpose of the loans. It's set forth in the preliminary limited operating memorandum and in other places in the record. So actually, it is more like that, I think, than a student loan, but those notes aren't getting out into commerce anyway. They're going in a drawer somewhere. They're to make it easier to sue when somebody doesn't pay back the loan, just like when you have a note in a mortgage when you buy your home. That's not going to be out in commerce. It's going to be you're only going to need that note when you have to go sue on it. Let me just say, first of all, it was really the appellant's burden. It is the appellant's burden to show why the court below was wrong. It's also the plaintiff's burden. The plaintiff is the appellant here. It's the plaintiff's burden to show they have standing. To have standing under blue-chip stamps, you must have been the purchaser or seller of a security. Now, they focus on they sold these notes, but they never, ever said that the notes were a security. It's not my burden to prove the notes are a security. That's their burden. And to say that the court below didn't address it, okay, the court below didn't address it. The court below went straight to sale, because the first thing she looked at was the bonds, because below they argued that they issued the bonds. They're not arguing that here to you, but that's what they argued below. So Judge Preska was, obviously the bonds are securities, so she was in no-sale mode. So she looked at the bonds, no sale. She looked at the notes, no sale. Never had to decide whether or not they were securities. We, on the other hand, attacked both things. We said they are not securities, and they weren't sold. Why are they not securities? It has nothing to do with municipal disclosure rules. It has to do with, really, the definitions that are provided under CFR, both under Rule 3B-5 for the 34 Act and Rule 131 for the 33 Act, and the cases that really, and I hope you read these cases, because, I mean, it will explain everything. Bexar, Gorsy, and Heritage. The Bexar, Gorsy, and Heritage cases, in those cases, factually identical. It wasn't a school. It was nursing homes in those cases. The nursing homes borrowed proceeds, not-for-profit nursing homes, just like not-for-profit schools, borrowed proceeds of a municipal bond offering, and they didn't pay it back. The bondholders sued the nursing homes under 10B and 12-2. Under 10B, of course it wasn't dismissed. Why? Because, well, surely the bondholders purchased securities. That wasn't an issue there. But under Section 12-2 of the 1933 Act, you're only liable if you are a seller of securities. A seller of securities has to, cannot put false statements in offering documents, right, under 12-2. A seller may not put false statements into an offering document. And in that case, the Court dismissed the 12-2 cases against the non-profit nursing homes. Why? Because they didn't sell securities. They are not a seller of securities. How can the Academy, there's no question that if the bondholders brought a 12-2 case against the Academy here, it would be dismissed. Why? Because they have not sold securities. How can it be that Section 12-2, they could be excused from Section 12-2 because of the definitions under the rules that say that they are not the seller of securities, but for purposes of 10B-5 they can be the sellers of securities. That just doesn't make any sense. Frankly, you know, they didn't even say in the court below that nowhere did they say, not in the court below, I'm sorry, in their opening brief, nowhere did they say that it should be presumed that notes are securities. They never said that. Their opening brief was 12 pages long. They never said notes are presumed to be securities. If they had, we would have said no, they're not. But they never said that. They say it's our burden to rebut that, but they didn't say it in the first place. They missed it in their opening brief. That's why their reply brief is three times longer than their opening brief. I would be happy to go through the Reeves factors. I think that they really do help us, to be honest. As I said, family resemblance is just like a mortgage. That's really what it was, to buy their school buildings. The purpose, well, the purpose was not the general use of the business enterprise. Look at what the PLOM says. The purpose is to buy the school buildings. And the buyer, assuming the buyer was the State of Wisconsin, let's call that the buyer, for argument's sake, they're not interested in the profit on the notes. They don't make any profit on the notes. They make their money off the bonds. It's not a lot of money, believe me. But they get paid based on the bonds, not on the notes. The second Reeves factor, the plan of distribution, these notes were never going to be distributed. They're going to go in a drawer somewhere in case they ever have to be sued on. The reasonable expectations of the investing public. The investing public, I don't even know if they knew about the notes. They might have if they read all the offering documentation. But they're not buying the notes. They're buying the bonds, and they're being paid based on the bonds. And the fourth Reeves factor, which is some other factor which reduces the risk, well, we didn't need another regulatory scheme to reduce the risk because 10B applies here. If the bondholders have a claim, they can bring it. They're the investors. Even if you consider the state of Wisconsin to be an investor, it can also bring a 10B claim because it sold securities. So there is no risk here for the investing parties. As to the Realtek case, look, to be honest, the Realtek case involved 60 notes that were pooled so that they could be invested in. That's not what happened here. There were two notes. There were two loans, so there were two notes. Two notes got put in a drawer until default. Can I just follow that distinction? I mean, they didn't need to be pooled because they alone were the underlying economic value of the bonds. And this goes back to the question I asked Mr. Lee. Is it the case that the bondholders are not going to get paid if the notes aren't paid? Correct. Right, okay. Well, yes, if the academy doesn't meet its obligation to repay its loan. Right. The bondholders can only look to the academy to repay the loan. That's correct. Absolutely. So the other case, actually, that was relied upon. So the investing public, meaning the bondholders, are depending on the notes, ultimately. No, they're relying on the obligation. They're not relying on the notes at all. They're relying on the bonds. They're suing on the bonds. They're not suing on the notes. They never see the notes. The notes aren't theirs. They can't sue on the notes. The bond is an obligation, right? That's what a bond is. But this is why I'm having trouble with the concept of the transaction here. You know, I found the plaintiff's briefing, frankly, somewhat confusing as to are they talking about the bonds or the notes and who sold what and in what capacity are they a seller. But at some level, the bonds are being issued on behalf of the plaintiff, and the plaintiff is the one that's going to get sued if the bonds don't get paid, and the bonds don't get paid if the notes are defaulted on. Well, they're not issued on behalf of the academy. They're issued with the intention that the proceeds that will be obtained from the bond will be loaned to the academy, and they have to pay that loan back. Okay. But I guess I'm wondering, you know, if there were misrepresentations that affected the bondholders, they would be able to sue as purchasers of the bonds, right? Absolutely they would. No question about it. Yes? Now, as you know, this is a great circuit in the law of corporations and securities. Is this case unusual? Is this a novel case in our circuit? Honestly, other than the three cases I told you about, which were not in this circuit, by the way. And they're all district court decisions. And they're all district court decisions. They are all district court decisions. I couldn't find anything closer than those. Is there a story behind that? Is there something that would explain that? I have no story to tell on that. I can't explain it. I think that this may very well be a question of first impression. Well, that happens from time to time. It does. Thank you very much. Thank you. Mr. Lee, you've reserved some time. Your Honor, counsel said in our briefing we didn't address the Reeves tests. We didn't need to because the district court said, assuming the notes are security. So the district court had taken a position that the notes are security. Where the district court went astray was the debate about whether the notes that are security. No, it's different to take a position that the notes are a security and to say I don't need to reach that, in effect, because assuming they're securities, you're not the seller. Now, if the district court was wrong about that, should it go back to the district court to address the Reeves test? I believe that probably is the better course because it gives the appellees the opportunity to raise the Reeves issue, which they didn't raise below. Are they supposed to raise that issue? Don't you have to establish standing? Your Honor, actually, in our briefing, counsel has said we didn't raise the issue about Reeves and the family resemblance test about the note being a security below. The record in our brief, beginning on page 387 and 388, we actually raise the argument that the notes under the Reeves test are notes, are securities. And what we said, it was their burden to address it. They didn't move to dismiss on that basis in their motion to dismiss. But we said, nonetheless, despite their failure to raise it below in their motion to dismiss, we pointed out that if you look at the Reeves test, those notes are securities. So we did raise it below. The district court chose to say, I assume the notes are securities, without addressing it. But we did, in fact, raise that. Reeves does say it's their burden to show that the notes are not security. Now, counsel mentioned that these notes were not for the business. Yes, they were not. But what we said, it was their burden to show that the notes are not securities.   Now, we said, if you look at this, these are not securities.   They're not for the business.  We're going to raise the issue about the note being a security below in their motion to dismiss. Which is what drives those types of notes into the category of not your commercial securities. They pointed out, they said, okay, we're going to attach the loan transactions. And they said to the district court, you are now allowed to construe this transaction and get a full understanding of what this transaction is, what you're ruling. We point out, in our reply, that based on the documents they asked the court to consider in the ruling, that the essence of the transaction was the notes. Which is why we raised the argument that even assuming, okay, the conduit argument that we are really the issuers through the conduit, the notes themselves are still a security, because we point to the documents they attached in their motion to dismiss. And we say, if you look at this transaction, if you look at the preliminary offering memo, if you look at the final offering memo that they've attached and they've asked the court to consider, that describes a transaction which Your owes security obligation to the bondholders. And if the academy failed to generate the revenue, the only recourse was against the academy. Now, we asked the question, I heard the court ask the question, why is this a novel issue? It's interesting, because counsel mentioned in the Gorsy cases that they proceeded against the non-for-profit. Actually, no. In all the different cases, the non-for-profits went bankrupt. So there was no non-for-profit to pursue. Right? Congress created the 1933 Act and the 1934. Congress elected to limit the 12-2 remedy in the 1933 Act only against sellers. Right? Which is why you see in the cases they cite, you have a distinction between, I think in one of the cases in Bexar, it says, unfortunately, that the acts as drafted in 1933 and 1934 create a loophole where sometimes the bondholders or the investors can't sue the non-for-profit. And they recognize, well, that's something that, unfortunately, Congress must change, not the courts. Mr. Lee, your reliance on Reeves or the suggestion that you had, in fact, invoked Reeves, you brought to our attention page 387 of this incredibly unwieldy appendix. I don't see a reference to Reeves. I do see it on page 388, where it seems to be a citation to a district court decision, which in turn cited Reeves. Is that the only time that you invoked Reeves? Ron, if you give me one brief minute, let me search. I wouldn't trouble you with this except for the fact that you brought it to our attention. Let me find a response to, I think it's Chan as well. In any event, the briefs before us certainly do not apparently cite Reeves, or at least they're not referred to in the table of cases, which are meant to give us a quick way of getting to cases. Your Honor, but to answer your question, it's not our burden to dispute that the notes at issue are securities. Reeves makes it very, very, very clear that the person, the notes are securities. So we can't rely on it. On Reeves? No. Your Honor, we point out that the test is Reeves. In our reply, we said they've never addressed Reeves. Right? What we mention is that the family resemblance test, which is the Reeves test, I believe that actually Reeves adopted the test from this circuit, which put forth the test that eventually became the Reeves test. And I'm trying to see. So it's in the reply brief that you first surface Reeves significantly. Well, in response to their argument that the notes are not a security because of the municipal disclosure rules. And we point out, well, that's not the proper test to travel under. Right? They had the ability, it's their burden to prove that the notes are not the type of notes that would generally be a security. They had the opportunity to say, look at Reeves, and instead they say, well, we're going to look at the municipal security rules. And we say, no, no, no, that's not where you're supposed to look. You're supposed to look at Reeves. Thank you.